Entered: September 30th, 2021
Signed: September 30th, 2021



**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | |
|---|---|
| In re:<br><br>ROY SENS AND<br>MELANIE SUSAN SENS,<br><br>    Debtors. | Case Number:  17-18481-MCR<br>(Chapter 7) |
| SENS, INC., *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>WHITEFORD, TAYLOR<br>& PRESTON, LLP, *et al.*,<br><br>    Defendants. | Adversary Number:  20-00149-MCR |

### MEMORANDUM OPINION REGARDING ORDER
### <u>DETERMINING AGREED UPON PRELIMINARY ISSUES</u>

In this adversary proceeding, Plaintiff Sens, Inc. ("<u>Sens</u>") and Plaintiff Monique Almy,

Chapter 7 trustee for Sens Mechanical, Inc. (the "<u>SMI Trustee</u>"; collectively with Sens, the

"<u>Plaintiffs</u>"), filed a First Amended Complaint and Demand for Jury Trial [Dkt. No. 24] (the

"<u>Amended Complaint</u>") asserting a legal malpractice claim against Defendant Whiteford, Taylor

& Preston, LLP ("WTP") and Defendant Thomas C. Beach, III ("Mr. Beach"; collectively with WTP, the "Defendants").  Sens, Sens Mechanical, Inc. ("SMI"), Roy Sens ("Mr. Sens") and Melanie Sens ("Mrs. Sens"; together with Sens, SMI and Mr. Sens, the "Sens Parties") originally brought suit in state court, and the Defendants removed the case to this Court.  Sens and the SMI Trustee then filed the Amended Complaint removing Mr. Sens and Mrs. Sens as plaintiffs and substituting the SMI Trustee for SMI.  This Court issued an order directing the parties to show cause why the Court should not abstain from the adversary proceeding, and all parties agreed that the Court should retain the case to resolve preliminary issues based on bankruptcy law and then, with regard to any claims not implicated by this Court's ruling or otherwise not dismissed, the matter should be remanded to state court for further proceedings.

Although the parties define the issues for this Court to resolve somewhat differently, simply stated, the issues are:  (1) whether the applicable statute of limitations barred SMI from filing the initial complaint; (2) whether SMI had standing to file the initial complaint under bankruptcy principles; (3) whether the SMI Trustee's filing of the Amended Complaint and substitution as plaintiff for SMI was proper under applicable Federal rules; (4) whether SMI was judicially estopped from pursuing a claim against the Defendants because SMI did not identify the claim in its bankruptcy schedules until approximately two-and-a-half years after SMI commenced its bankruptcy case and one month after SMI and the other Sens Parties filed suit against the Defendants in state court; and (5) whether the SMI Trustee is judicially estopped from pursuing the claim against the Defendants.

For the reasons stated below, the Court concludes that (1) the Sens Parties timely filed the initial complaint because the applicable limitations period began to run on December 18, 2018 and the Sens Parties filed the initial complaint on February 28, 2020, less than three years later; (2) SMI

did not have standing to file the initial complaint because only the SMI Trustee could have filed

the complaint under applicable law; (3) although SMI did not have standing to file the initial

complaint, the SMI Trustee properly substituted in as a Plaintiff for SMI and the action can and

should proceed as if it had been originally commenced by the SMI Trustee, the real party in

interest; (4) SMI was not judicially estopped from pursuing the claim against the Defendants even

though it delayed disclosure of the claim because there is no evidence that SMI acted intentionally

to mislead the Court to gain an unfair advantage; and (5) even if SMI were judicially estopped

from pursuing the claim against the Defendants, the SMI Trustee would not be judicially estopped

from pursuing the claim because SMI's delay in disclosing the claim is not attributable to the SMI

Trustee.

To be clear, the Court considers the issues presented only as they apply to SMI and the

SMI Trustee and to the Amended Complaint.  The Defendants contend the issues and arguments

may extend to Mr. Sens and Mrs. Sens, who are also debtors in bankruptcy, because they are

plaintiffs under the initial complaint, which would be operative if the Court were to determine that

the Amended Complaint was improperly filed and should be stricken.  Because the Court

concludes that the Amended Complaint was timely filed and procedurally proper, the Amended

Complaint replaced and superseded the initial complaint and the initial complaint and any claims

thereunder by Mr. Sens and Mrs. Sens have no operative effect.

I.    FACTUAL BACKGROUND

The Plaintiffs and Defendants agree to the following facts except as otherwise noted.

A.    Construction Contract

Sens and SMI are two construction companies owned and operated by Mr. Sens.  First Am.

Compl. and Demand for Jury Trial [Dkt. No. 24] (cited herein as "Am. Compl.") at ¶ 6.  According

to the Plaintiffs, Mr. Sens has extensive, decades-long experience and specializes in commercial construction, specifically the construction of hotels, condominiums and restaurants.  Am. Compl. ¶ 6.

On or about June 9, 2014, Sens and Inns of Ocean City, LLC ("IOOC") entered into a contract to construct a Marriott Residence Inn Hotel in Ocean City, Maryland (the "Project").  Am. Compl. at ¶ 7; Mem. of Law in Supp. of Def.'s Mot. to Dismiss Compl. and Am. Compl. [Dkt. No. 40-1] (cited herein as "Mot. to Dismiss") at p. 3.  Sens was the general contractor and SMI was the mechanical subcontractor for the Project.  Am. Compl. at ¶ 7.

Sens and IOOC divided the Project into two phases.  Am. Compl. at ¶ 8; Mot. to Dismiss at p. 4.  The first phase, with a contract price of approximately $1.4 million, entailed laying the foundation and pouring the concrete for the hotel.  Am. Compl. at ¶ 8; Mot. to Dismiss at p. 4.  The second phase involved building the interior of the hotel and increased the total price for both phases of the Project to $17.8 million.  Am. Compl. at ¶ 10; Mot. to Dismiss at p. 4.  Sens and IOOC initially agreed to a substantial completion date of March 30, 2016.  Mot. to Dismiss at p. 4.

The bank funding the Project's second phase for IOOC required Sens to secure performance and payment bonds.  Am. Compl. at ¶ 10; Mot. to Dismiss at p. 4.  Sens applied for the requisite surety bonds and was required to have additional indemnitors to qualify for the bonds. Am. Compl. at ¶ 11; Mot. to Dismiss at p. 4.  On or about June 19, 2014, United States Surety Company and U.S. Specialty Insurance Company (collectively, the "Sureties") provided a Performance Bond and a Labor and Material Payment Bond (collectively, the "Bonds"), both bearing Bond No. 1001039732 and both in the penal sum of $17,850,000.  Am. Compl. at ¶ 12; Mot to Dismiss at p. 4.  The Bonds named Sens as principal and IOOC as obligee on the Project.

Am. Compl. at ¶ 12.  Mr. Sens and Mrs. Sens (and others) were co-indemnitors for the bonds.  Am. Compl. at ¶ 12; Mot. to Dismiss at p. 4.

      B.     <u>Dispute Between Sens and IOOC</u>

Almost immediately, Sens' work on the Project fell behind schedule.  The Plaintiffs claim that their work on the Project was hindered from the start by a failure on the part of IOOC to provide the necessary architectural drawings and plans for the construction and by delays in payment.  Am. Compl. at ¶ 13; Mot. to Dismiss at p. 5.  In or about the Spring of 2016, IOOC threatened to make demand against the Sureties and began to assess liquidated damages against Sens.  Am. Compl. at ¶¶ 14-15.

On or about April 15, 2016, Sens and/or SMI requested that the Defendants (with whom they had a previous attorney-client relationship) help resolve their dispute with IOOC, and the Defendants agreed to represent Sens, SMI and Mr. Sens.  Am. Compl. at ¶¶ 16-17; Mot. to Dismiss at p. 5.[1]  According to the Plaintiffs, the primary goals in engaging the Defendants were to salvage the Project and, more importantly, avoid any claims by IOOC against the Sureties because the Sureties would have indemnification and other rights against the Sens Parties.  Am. Compl. ¶ 18.  The Plaintiffs further allege that Mr. Beach focused instead on an aggressive strategy of having Sens threaten to abandon the Project.  Am. Compl. ¶ 18.

According to the Defendants, on May 19, 2016, Sens sent a letter to IOOC informing IOOC that Sens was suspending all work on the Project due to a lack of final drawings, executed change orders and payments and due to the impending prospect of liquidated damages.  Mot. to Dismiss at p. 5.  Shortly thereafter, Sens and IOOC agreed to extend the substantial completion date to

---

[1] According to the Amended Complaint, both Sens and SMI engaged the Defendants, and according to the Motion to Dismiss, only Sens engaged the Defendants.  *See* Am. Compl. ¶ 16 and Mot. to Dismiss at p. 5.  At the instruction of the Court, the Defendants filed a copy of their termination letter, which confirms the Defendants represented Sens, SMI and Mr. Sens.  Def.'s Post-Hr'g Br. [Dkt. No. 52], Ex. B (termination letter).

May 31, 2016. Mot. to Dismiss at pp. 5-6. The Defendants further allege that, on June 6, 2016, IOOC advised one of the Sureties that the Project "is way behind schedule" and that Sens' performance was "late" and "disappointing." Mot. to Dismiss at p. 5.

    C.    <u>Termination of the Construction Contract</u>

On or about July 28, 2016, Mr. Beach sent a "Notice of Noncompliance with Contractual Requirements / Sens, Inc. and Inns of Ocean City, LLC Contract dated June 9, 2014, as Amended" to IOOC, which outlined the ways Sens believed IOOC failed to comply with the contract. Am. Compl. at ¶ 20; Mot. to Dismiss at p. 7. The Plaintiffs allege that this letter did not constitute a formal notice to IOOC to cure its breaches under the contract because it failed to include the requisite 14-day cure deadline as required by the contract. Am. Compl. at ¶¶ 20-21. The Plaintiffs further allege that, on or about August 1, 2016, Mr. Beach sent an email to Sens stating that, according to his interpretation of the contract, Sens could discontinue its work and leave the Project without giving a 14-day written notice as otherwise required by the contract. Am. Compl. at ¶ 22; Mot. to Dismiss at p. 7. On or about August 2, 2016, Sens sent a termination letter to IOOC and removed its workers from the Project, allegedly in reliance on Mr. Beach's advice. Am. Compl. at ¶ 23; Mot. to Dismiss at p. 7.

On or about August 18, 2016, various representatives of Sens (including Mr. Beach), IOOC and the Sureties met to discuss a possible resolution of the disputes between Sens and IOOC, but the discussion was not fruitful. Am. Compl. at ¶ 25; Mot. to Dismiss at p. 8. According to the Plaintiffs, the Defendants went into litigation mode rather than attempting to resolve the dispute, rescue the Project, not escalate the conflict with IOOC and not expose Mr. Sens and Mrs. Sens to individual liability on the Bonds. Am. Compl. ¶ 26.

On or about August 30, 2016, IOOC notified Sens that it was terminating Sens' right to perform work on the Project for cause and made demand on the Sureties pursuant to their obligations under the Bonds.  Am. Compl. at ¶ 27; Mot. to Dismiss at p. 8.  The Plaintiffs argue that Sens would have been able to successfully resolve its issues with IOOC and complete the Project without having to go out of business (or, in the case of SMI, without having to seek relief in a bankruptcy proceeding) and that the Sureties would have been able to successfully defend against IOOC's bond claims if Sens had not violated the contract's notice provisions and not left the Project pursuant to Mr. Beach's alleged advice.  Am. Compl. ¶ 29.

The Sureties hired a different contractor to complete the Project, paid the subcontractors and suppliers pursuant to the Bonds and asserted their rights against all indemnitors (including Mr. Sens and Mrs. Sens).  Am. Compl. at ¶¶ 30-32; Mot. to Dismiss at p. 8.  On or about November 22, 2016, the Sureties and IOOC entered into a Takeover Agreement whereby the Sureties agreed to fulfill their alleged obligations under the Performance Bond.  Am. Compl. ¶ 33; Mot. to Dismiss at p. 8.

### D.    Surety Lawsuit and Termination of the Defendants' Representation

On or about December 21, 2016, the Sureties filed a lawsuit against the Sens Parties and the other indemnitors in the Circuit Court for Baltimore County in a case styled as *United States Surety Company, et al. v. Sens Mechanical Inc., et al*, Case No. 03-C-16-013001 (the "Surety Lawsuit").  Am. Compl. at ¶ 35; Mot. to Dismiss at p. 8.  The Sureties sought damages in the amount of $17,575,838.84.  Am. Compl. at ¶ 35; Mot. to Dismiss at p. 8.

In a letter dated January 4, 2017, the Defendants terminated their representation of Sens, SMI and Mr. Sens because they were unable to keep the Defendants' legal bills current, and the Defendants withdrew their appearances as counsel in the Surety Lawsuit and related litigation

matters in which the Defendants had been representing Sens, SMI and Mr. Sens. Am. Compl. at ¶ 37; Def.'s Post-Hr'g Br. [Dkt. No. 52] (cited herein as "Def.'s Post-Hr'g Br."), Ex. B (termination letter).

On December 18, 2018, the Circuit Court for Baltimore County entered summary judgment in favor of the Sureties. Am. Compl. at ¶ 40; Mot. to Dismiss at p. 8. On or about February 25, 2019, the Sureties dismissed their lawsuit against the Sens Parties without prejudice. Am. Compl. at ¶ 41.

E.    Roy and Melanie Sens Bankruptcy Case

On June 21, 2017, Mr. Sens and Mrs. Sens filed a joint petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code"). *In re Sens*, Case No. 17-18481 (cited herein as "Sens Case").[2]  Monique D. Almy, who was later appointed to serve as the SMI Trustee, was appointed Chapter 7 trustee for Mr. Sens and Mrs. Sens' bankruptcy estate. Sens Case, Notice of Chapter 7 Bankruptcy Case [Dkt. No. 11].

On June 22, 2017, Mr. Sens and Mrs. Sens filed their bankruptcy schedules and swore under penalty of perjury that their schedules were true and correct. Sens Case, Schedules [Dkt. No. 3]. Question #33 of Schedule A/B requires disclosure of "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment," and Question #34 requires disclosure of "[o]ther contingent and unliquidated claims of every nature." *Id.* In response to both of these questions, Mr. Sens and Mrs. Sens responded "No," indicating that they have no such claims to disclose. *Id.*

---

[2] The Court may take judicial notice of the docket and filings in another case when done so in furtherance of a just result. Fed. R. Evid. 201; *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239-40 (4th Cir. 1989); *Cochran v. Griffith Energy Servs.*, 43 A.3d 999 (Md. 2012).

On September 29, 2017, Mr. Sens and Mrs. Sens filed an Amended Schedule A/B, which again did not disclose any claims against third parties or other contingent and unliquidated claims. Sens Case, Am. Schedule A/B [Dkt. No. 55].

On October 13, 2017, the Chapter 7 trustee in Mr. Sens and Mrs. Sens' case filed a motion seeking Court approval of a settlement pursuant to which Mr. Sens and Mrs. Sens would redeem and retain their non-exempt assets in exchange for a payment of $64,402.50. Sens Case, Mot. for Approval of Compromise and Settlement [Dkt. No. 60]. On November 9, 2017, the Court entered an order approving the settlement. Sens Case, Order Approving Compromise and Settlement [Dkt. No. 66].

On November 16, 2017, the Court granted Mr. Sens and Mrs. Sens a discharge under Section 727 of the Bankruptcy Code. Sens Case, Order of Discharge [Dkt. No. 68].

On October 9, 2018, the Chapter 7 trustee filed her final account and certified that the estate had been fully administered. Sens Case, Final Account [Dkt. No. 84]. The next day, the Court entered a Final Decree stating that the estate was fully administered and the case was closed. Sens Case, Final Decree [Dkt. No. 85].

On March 29, 2020, approximately 18 months later, Mr. Sens and Mrs. Sens filed a motion requesting that their case be reopened because they learned "subsequently" (the motion does not say subsequent to what) that they had a malpractice claim so they wanted to amend their schedules to disclose the claim and have the Chapter 7 trustee reappointed so she could administer the asset as she deemed appropriate. Sens Case, Mot. to Reopen [Dkt. No. 86]. On May 15, 2020, the Court granted the motion to reopen and reappointed the Chapter 7 trustee. Sens Case, Order Reopening Case [Dkt. No. 91].

On the same day that they filed the motion to reopen their case, Mr. Sens and Mrs. Sens filed a Second Amended Schedule A/B, which for the first time discloses their malpractice claim against the Defendants.  Sens Case, Second Am. Schedule A/B [Dkt. No. 87].  Specifically, in response to Question #33, which requires disclosure of any "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment," the Second Amended Schedule A/B discloses a "[l]egal malpractice claim against Whiteford Taylor & Preston," with a stated value of "unknown ($20 million +)."  *Id.*  Mr. Sens and Mrs. Sens attached to the Second Amended Schedule A/B a copy of the complaint they filed (along with Sens and SMI) against the Defendants in state court.  *Id.*[3]  The Sens Parties filed the attached complaint (the "Initial Complaint") against the Defendants, on February 28, 2020, in the Circuit Court for Howard County in the case styled *Sens, Inc., et al. v. Whiteford Taylor and Preston, L.L.P., et al.*, Case Number C-13-CV-20-000231 (the "State Court Action").

On November 4, 2020, the trustee filed her Report of No Distribution in the reopened case, certifying that the estate had been fully administered and reporting that "I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and

---

[3] In addition, in their original Schedule A/B, in response to Question #19 which requires disclosure of "[n]on-publicly traded stock and interests in incorporated and unincorporated businesses," Mr. Sens and Mrs. Sens identify Sens, SMI and a third entity, Sens Service, Inc., state that they own 100% of each company and value their interest in each at $1. Sens Case, Schedule A/B [Dkt. No. 3].  In their First Amended Schedule A/B, the response to the same question is blank.  Sens Case, First Am. Schedule A/B [Dkt. No. 55].  In their Second Amended Schedule A/B, in response to this question, Mr. Sens and Mrs. Sens identify Sens, SMI and the third entity, state that they own 100% of each and value their interests in Sens and SMI as "unknown" and their interest in the third entity at $1. Sens Case, Second Am. Schedule A/B [Dkt. No. 87].  The Defendants argue that Mr. Sens and Mrs. Sens scheduled the value of Sens and SMI in this fashion in furtherance of the Sens Parties' alleged attempt to conceal the claim against the Defendants.  Reply to Pl.'s Opp'n to Mot. to Dismiss at pp. 18-19.  As stated in the introduction to this Memorandum Opinion, the Court considers the issues presented only as they apply to SMI, the SMI Trustee and the Amended Complaint.  The Court therefore is not considering the Defendants' arguments regarding the implications in the Sens Case.

that there is no property available for distribution from the estate over and above that exempted by law." Sens Case, Chapter 7 Trustee's Report of No Distribution [Dkt. No. 101].

Mr. Sens and Mrs. Sens' bankruptcy case remains open and pending.

F.    Sens Mechanical, Inc. Bankruptcy Case

On August 11, 2017, SMI filed a petition for relief under Chapter 11 of the Bankruptcy Code. *In re Sens Mechanical, Inc.*, Case No. 17-20880 (cited herein as "SMI Case").

On August 25, 2017, SMI filed its bankruptcy schedules and declaration swearing under penalty of perjury that the schedules were true and correct. SMI Case, Schedules and Declaration [Dkt. Nos. 17 and 18]. Question #74 of Schedule A/B requires disclosure of "[c]auses of action against third parties (whether or not a lawsuit has been filed)," and Question #75 requires disclosure of "[o]ther contingent and unliquidated claims or causes of action of every nature." *Id.* SMI did not provide any information in response to either question. *Id.*

On October 25, 2017, SMI filed a motion seeking to convert its case to a Chapter 7 proceeding, and on November 21, 2017, the Court entered an order converting the case. SMI Case, Mot. to Convert to Chapter 7 and Order Converting From Chapter 11 to a Case Under Chapter 7 on Debtor's Req. [Dkt. Nos. 47 and 56]. On November 21, 2017, Monique D. Almy, who was already serving as the Chapter 7 trustee in the Sens Case, was appointed Chapter 7 trustee for SMI's bankruptcy estate. SMI Case, Notice of Chapter 7 Case [Dkt. No. 57].

On August 13, 2019, the SMI Trustee filed a final account and certified that the estate had been fully administered. SMI Case, Final Account [Dkt. No. 117]. The next day, the Court entered a Final Decree stating that the estate was fully administered and the case was closed. SMI Case, Final Decree [Dkt. No. 118].

On March 29, 2020, SMI filed a motion to reopen, almost identical to the motion filed in the Sens Case on the same day, requesting that its case be reopened because it learned "subsequently" (again, the motion does not say subsequent to what) that it had a malpractice claim, it wanted to amended its schedules to disclose the claim and the SMI Trustee should be reappointed so that she could administer the asset as she deemed appropriate. SMI Case, Mot. to Reopen [Dkt. No. 119]. On June 2, 2020, the Court granted the motion to reopen and reappointed the Chapter 7 trustee. SMI Case, Order Reopening Case [Dkt. No. 123].

On the same day it filed the motion to reopen its case, SMI filed an Amended Schedule A/B, which for the first time disclosed its malpractice claim against the Defendants. SMI Case, Am. Schedule A/B [Dkt. No. 120]. In response to Question #74, which requires disclosure of any "[c]auses of action against third parties (whether or not a lawsuit has been filed)," the Amended Schedule A/B discloses a "Legal Malpractice claim against Whiteford Taylor," with a stated value of "unknown ($20MM+)." *Id.* SMI attached a copy of the Initial Complaint to the Amended Schedule A/B. *Id.*

On August 3, 2020, the SMI Trustee filed a motion seeking approval of an agreement among the SMI Trustee, Sens, Mr. Sens and Mrs. Sens that any recovery in connection with claims against the Defendants will be divided equally between the SMI Trustee, on behalf of SMI's bankruptcy estate, and Sens. SMI Case, Mot. for Approval of Allocation Agreement with Sens Parties [Dkt. No. 127]. On October 8, 2020, the Court granted the motion and approved the allocation agreement. SMI Case, Consent Order Approving Allocation Agreement with Sens Parties [Dkt. No. 134].

SMI's bankruptcy case remains open and pending.

G.    Tolling Agreement

The Plaintiffs allege that, in January 2019, after the Sens Case was closed, Mr. Sens realized that he may have a legal malpractice claim against the Defendants.  Pl.'s Post-Hr'g. Br. [Dkt. No. 51] (cited herein as "Pl's Post-Hr'g Br.") at p. 25.  Mr. Sens engaged Christopher Hoge as his attorney and, on behalf of SMI, authorized him to discuss the legal malpractice claim with the SMI Trustee.  Pl.'s Post-Hr'g. Br. at p. 25; Def.'s Trial Ex. 4 (Sens deposition transcript) at 78:22-79:8.

On July 1, 2019, the Sens Parties and the Defendants entered into a tolling agreement (the "Tolling Agreement").  Def.'s Trial Ex. 1 (tolling agreement, first extension and second extension; cited collectively herein as "Tolling Agreement"); Pl.'s Trial Ex. 3 (same).  The Tolling Agreement tolled the statute of limitations for any claims that may be asserted by the Sens Parties against the Defendants for a period of five months, from July 1, 2019 to December 1, 2019.   Tolling Agreement at ¶ 2.  The Sens Parties and the Defendants extended the Tolling Agreement twice, first through February 1, 2020 and then through March 1, 2020.   Tolling Agreement (first extension and second extension).

The SMI Trustee is not a party to the Tolling Agreement.

II.    PROCEDURAL BACKGROUND

On February 28, 2020, prior to the expiration of the tolled limitations period set forth in the Tolling Agreement, the Sens Parties filed the Initial Complaint against the Defendants in the State Court Action.  The Complaint alleges that the Defendants committed legal malpractice when they advised Sens and SMI they could leave the Project without giving a 14-day notice.  Notice of Removal and Compl. [Dkt. No. 1-1].

On May 8, 2020, the Defendants removed the State Court Action to this Court and filed a motion to dismiss or, in the alternative, for summary judgment.  Notice of Removal [Dkt. No. 1]; Mot. to Dismiss [Dkt. No. 3].

On July 28, 2020, Sens and the SMI Trustee filed the Amended Complaint, which removes Mr. Sens and Mrs. Sens as plaintiffs and adds the SMI Trustee as a Plaintiff on behalf of the bankruptcy estate of SMI.  Sens, which is not a debtor in bankruptcy, remains a Plaintiff in the Amended Complaint.

On October 15, 2020, the Court entered an Agreed Order [Dkt. No. 38] (the "Agreed Order") in which the parties agreed, and the Court decreed, that this Court shall "retain the case to resolve preliminary issues based on bankruptcy law and then, with regard to any claims not implicated by this Court's rulings or otherwise not dismissed, this matter should be remanded to the Circuit Court for Howard County, Maryland for further proceedings."  Although the Plaintiffs and Defendants agreed in principle on the issues to be resolved by this Court, they stated the issues somewhat differently.

The Plaintiffs articulate the bankruptcy-related issues as follows:

1.    Estoppel:

    a.    Whether SMI was required to schedule its claims against the Defendants in its bankruptcy schedules and/or amendments thereto.

    b.    Whether SMI is estopped from pursuing its claims against the Defendants.

    c.    Whether the SMI Trustee may step in on behalf of SMI as plaintiff.

2.    Statute of Limitations:

    a.    Whether SMI lacked standing to file a state court complaint under bankruptcy principles.

    b.    Whether the applicable statute of limitations bars SMI from pursuing its claims against the Defendants.

     c.     Whether the SMI Trustee's filing of the Amended Complaint and substitution into the case was proper under the Federal rules, and the impact, if any, on the Defendants' estoppel, standing and limitations defenses.

The Defendants articulate the bankruptcy-related issues as follows:

1.     Estoppel:

     a.     Whether SMI, Mr. Sens and Mrs. Sens were judicially estopped from filing a complaint on account of their failure to schedule claims against the Defendants in their bankruptcy schedules and amendments thereto.[4]

     b.     Whether the SMI Trustee could cure the estoppel by stepping in as plaintiff (irrespective of the statute of limitations bar).

2.     Statute of Limitations:

     a.     Whether SMI, Mr. Sens and Mrs. Sens lacked standing to file a state court complaint under bankruptcy principles, resulting in a time barred complaint under the statute of limitations.[5]

     b.     Whether the SMI Trustee's filing of the Amended Complaint and substitution into the case was proper under the Federal rules, and whether such Amended Complaint impacts the estoppel, standing and limitations defenses.

The Agreed Order provides that the Court will retain jurisdiction over the adversary proceeding only to resolve the issues set forth above and that, if the adversary proceeding is not dismissed by this Court based on the bankruptcy issues, it will be remanded to the Circuit Court for Howard County for further proceedings. The Agreed Order also set a discovery and briefing schedule.

On November 13, 2020, the Defendants filed a Motion to Dismiss Complaint and Amended Complaint [Dkt. No. 40] (the "Motion to Dismiss") arguing that (i) SMI lacks standing to sue because it failed to disclose its claim against the Defendants in its schedules, (ii) the SMI Trustee's

---

[4] As stated in the introduction to this Memorandum Opinion, the Court considers the issues presented only as they apply to SMI, the SMI Trustee and the Amended Complaint. The Court therefore is not considering the issues as they may apply to Mr. Sens and Mrs. Sens.

[5] *See* footnote 4 above.

claim is barred by the statute of limitations because it was filed more than three years after the claim was discovered or reasonably should have been discovered, and (iii) SMI is judicially estopped from bringing suit due to its failure to identify the claim in its bankruptcy schedules. Mot. to Dismiss at pp. 1-3.

On December 4, 2020, the Plaintiffs filed their Memorandum of Law in Opposition to Defendants' Motion to Dismiss Complaint and Amended Complaint [Dkt. No. 43] (the "Opposition"; cited herein as Pl.'s Opp'n to Mot. to Dismiss"). In their Opposition, the Plaintiffs argue that (i) the Defendants' standing argument has no merit because the SMI Trustee substituted in for SMI as the real party in interest, (ii) the Defendants' limitations argument has no merit and is unsupported by law, and (iii) the doctrine of judicial estoppel does not apply to the SMI Trustee and, even if it did, there is no factual or legal basis for application of the doctrine. Pl.'s Opp'n to Mot. to Dismiss at p. 2.

On January 6, 2021, the Defendants filed their Reply to Plaintiffs' Opposition to Motion to Dismiss [Dkt. No. 44] (the "Reply"; cited herein as "Reply to Pl.'s Opp'n to Mot. to Dismiss") in which they respond to and rebut the Plaintiffs' arguments in the Opposition.

On January 22, 2021, the Court held a hearing at which it heard argument on the bankruptcy issues. At the hearing, the Court took judicial notice of various filings in the Sens Case, the SMI Case and this adversary proceeding and admitted into evidence (i) the Tolling Agreement between the Sens Parties and the Defendants with its two extensions (Defendants' Exhibit 1 and Plaintiffs' Exhibit 3), (ii) excerpts from the deposition of Mr. Sens on December 28, 2020 (Defendants' Exhibit 4), (iii) a letter from counsel for the Sens Parties to the Defendants dated June 5, 2019 putting the Defendants on notice that the Sens Parties were asserting a malpractice claim against them (Defendants' Exhibit 5 and Plaintiffs' Exhibit 1), and (iv) a letter from counsel for the Sens

Parties to counsel for the Defendants dated February 19, 2020 notifying the Defendants that the Plaintiffs intended to file suit (Plaintiffs' Exhibit 2). In addition, the Court instructed the parties to stipulate to the date on which the Defendants terminated their representation of the Sens Parties or provide evidence regarding the same. Tr. of Jan. 22, 2021 Hr'g [Dkt. No. 46] at 86:11-87:4. In response, the Defendants filed a copy of their termination letter dated January 4, 2017. *See* Def.'s Post-Hr'g Br., Ex. B (termination letter).[6] This was the extent of the evidence presented; no testimony was taken at the hearing.

On January 27, 2021, the Court issued an Order Regarding Post-Hearing Briefing on Motion to Dismiss [Dkt. No. 48] which required the parties to submit post-hearing briefs regarding (1) cases cited for the first time during the hearing, (2) application of the discovery rule on the limitations issue (*i.e.*, when the Sens Parties knew or should have known that they had a claim against the Defendants), (3) when the Defendants' representation of the Sens Parties terminated, and (4) any other issue the parties want to address. The factual record was closed except with regard to the date on which the Defendants terminated their representation, and the parties anticipated reaching a stipulation on that issue.

On February 16, 2021, the Plaintiffs filed their Post-Hearing Brief [Dkt. No. 51], and the next day, the Defendants filed their Post-Hearing Brief [Dkt. No. 53]. The post-hearing briefs addressed the issues raised in the Court's January 27, 2021 order and expanded on the parties' arguments in the Defendants' Motion to Dismiss and the Plaintiffs' Opposition.

III.    LEGAL STANDARD

The procedural posture of this adversary proceeding is unusual. Although the issues are presented in the context of a Motion to Dismiss, the parties agreed on the issues to be resolved by

---

[6] *But see* footnote 7 below.

this Court in the Agreed Order, conducted discovery on these issues and base their arguments, in part, on the factual record.  If the Court were to consider the issues under a dismissal standard, or even a summary judgment standard, then it is possible that some or all of the issues would not be fully resolved.  This would be contrary to the Agreed Order and could also present procedural hurdles in the State Court Action.  Therefore, the Court will treat the Motion to Dismiss as a request for declaratory relief.  This will ensure that the issues to be decided by this Court are fully resolved as contemplated by the parties and the Court.

Section 2201 of Title 28 of the United States Code provides in part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

Bankruptcy courts have jurisdiction to enter declaratory judgments on matters concerning the administration of the estate.  *McDow v. We the People Forms Ctrs., Inc. (In re Douglas)*, 304 B.R. 223, 231 (Bankr. D. Md. 2003).  A court should entertain a declaratory judgment action when it finds that the relief sought will serve a useful purpose in clarifying and settling the legal relations in issue and will afford relief from the uncertainty and controversy giving rise to the proceeding. *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994).

IV.   ANALYSIS

A.   Limitations

The threshold issue before the Court is whether the limitations period on the Plaintiffs' malpractice claim expired before the Sens Parties filed the Initial Complaint.  The Court concludes that the applicable limitations period began to run on December 18, 2018, when the Circuit Court

for Baltimore County granted summary judgment in favor of the Sureties in the Surety Lawsuit.

Therefore, as detailed below, the Initial Complaint, filed on February 28, 2020, was timely filed.

        1.    <u>Limitations under Maryland law</u>

Section 5-101 of the Maryland Courts and Judicial Proceedings Article provides that "[a]

civil action at law shall be filed within three years from the date it accrues unless another provision

of the Code provides a different period of time within which an action shall be commenced."  Md.

Code Ann., Cts. & Jud. Proc. § 5-101.

Maryland has adopted the discovery rule for determining when a cause of action accrues.

*Hahn v. Claybrook*, 100 A. 83 (Md. 1917).  The discovery rule tolls "the accrual of the limitations

period until the time the plaintiff discovers, or through the exercise of due diligence, should have

discovered, the injury."  *Frederick Rd. Ltd. P'ship. v. Brown & Sturm*, 756 A.2d 963, 973 (Md.

2000).  Thus, the limitations period begins to run when the plaintiff knows of circumstances which

would cause a reasonable person in the plaintiff's position to investigate, with reasonable

diligence, and such investigation would have led to the discovery of the alleged tort.  *Pennwalt*

*Corp. v. Nasios*, 550 A.2d 1155, 1163 (Md. 1988).  For purposes of the discovery rule, the

"plaintiff [] has the burden of proving the applicability of the rule since, ordinarily, defendant will

have no personal knowledge of when plaintiff discovered, or should reasonably have discovered,

the facts upon which his cause of action is based, and plaintiff will know what facts were known

to him at any given period in time and what action he took to protect his rights."  *Edwards v.*

*Demedis*, 703 A.2d 240, 251 (Md. Ct. Spec. App. 1997) (citations omitted).

Maryland also recognizes the continuation of events principle, which tolls the limitations

period for certain claims when a fiduciary relationship exists between the parties.  *Frederick Rd.*

*Ltd. P'ship.*, 756 A.2d at 974.  This is so because a fiduciary relationship "gives the confiding

party the right to relax his or her guard and rely on the good faith of the other party so long as the relationship continues to exist." *Bresler v. Wilmington Trust Co.*, 348 F.Supp.3d 473, 485 (D. Md. 2018) (citing *Dual Inc. v. Lockheed Martin Corp.*, 857 A.2d 1095, 1107 (Md. 2004)). *See also Windesheim v. Larocca*, 116 A.3d 954, 969 (Md. 2015) (quoting *Frederick Rd. Ltd. P'ship.*, 756 A.2d at 975 ("A fiduciary relationship, 'by its nature, gives the confiding party the right to relax his or her vigilance to a certain extent and rely on both the good faith of the other party and that party's duty to disclose all material facts.'")). This theory is based upon the equitable principal of detrimental reliance. *Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A.*, 834 A.2d 170, 179 (Md. Ct. Spec. App. 2003). Trust is important in fiduciary relationships, especially the context of the attorney-client relationship where the client has the right to rely on its lawyer's advice and believe in its accuracy. *Id.*

The continuation of events principle does not apply if a party had knowledge or facts which would lead a reasonable person to investigate, with reasonable diligence, and such investigation would have revealed the wrongdoing of the fiduciary. *Bresler*, 348 F.Supp.3d at 485. The confiding party is under no duty to inquire about the quality of the services or advice received, unless and until something occurs to make him or her suspicious. *Supik*, 834 A.2d at 179. As explained by the Court of Appeals of Maryland:

> We believe, on the record in this case, a finder-of-fact could conclude that it was reasonable for the petitioners, untrained in the law and relying on the fiduciary relationship with their attorneys, to have failed to discover their cause of action against the respondents. This is particularly the case considering that their attorneys' past assurances regarding the legitimacy of the property transfer transaction proved to be accurate, the dispute with Montgomery County tax officials was resolved when the deed to the property was filed without the payment of additional taxes, and, the central issue in the tax litigation being the valuation of the farm land, that the petitioners knew that Brown was experienced in land valuation cases.

\*    \*    \*

> Quite clearly, reasonable minds could conclude that, to require the petitioners in this circumstance, while the respondents continued to represent them, not only to be suspicious of their lawyers, but to ferret out, by seeking yet more legal advice than that being obtained from Brown, Sturm, Burton and Hochberg, every possibility that their lawyers may have provided negligent advice, or that they were being defrauded, would amount to the exercise of extraordinary diligence, rather than that usually required, usual or ordinary diligence.

*Frederick Rd. Ltd. P'ship.*, 756 A.2d at 978-79.

### 2.    Determination of limitations issue by this Court

At the outset, the Court will address the Plaintiffs' argument that this Court should not decide when the statute of limitations began to run because that issue is more appropriately decided by a jury. The Plaintiffs argue that the Agreed Order allowed for limited discovery of bankruptcy-related issues, not issues of fact for the state court, which is why they did not take discovery. The Plaintiffs also contend the factual record currently before the court, which includes part of a transcript of Mr. Sens' deposition in December 2020, is inadequate to decide the statute of limitations issue. *See* Pl.'s Post-Hr'g Br. at pp. 11-13.

The Court disagrees. The Plaintiffs stipulated that this Court should decide "[w]hether the applicable statute of limitations bars [SMI] from pursuing its claims against the Defendants" in the Agreed Order the parties submitted to the Court. The Agreed Order expressly requires the Court to decide whether SMI's claim is time barred and, therefore, implicitly requires the Court to decide when limitations began to run. The Agreed Order permitted the parties to take discovery "for the limited purpose of addressing the issues raised in the Defendants' motion," which includes whether the Amended Complaint was filed after the expiration of the applicable statute of limitations. The Plaintiffs expressly consented to this Court determining whether the applicable statute of limitations bars SMI from pursuing its claims.

As there has been no dispute over the applicable limitations period, namely, the three-year period set forth in Section 5-101 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland, the pivotal limitations questions the Court is required to answer are when the three-year period began to run and whether the Initial Complaint was filed within the three-year period. Therefore, the Court will decide these issues based on the facts before it.

            3.      Commencement of the limitations period

The Court concludes that the limitations period on the Plaintiffs' claim against the Defendants began to run on December 18, 2018 when the Circuit Court for Baltimore County granted summary judgment in favor of the Sureties in the Surety Lawsuit. Therefore, as detailed below, the Sens Parties timely filed the Initial Complaint on February 28, 2020 because it was filed less than three years later. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 (requiring that any malpractice claim be brought within three years).

The Plaintiffs argue that the Sens Parties were not placed on inquiry notice about a potential claim against the Defendants until January 2019, which was when Mr. Sens learned that the Circuit Court for Baltimore County granted summary judgment in favor of the Sureties in the Surety Lawsuit. The Plaintiffs claim that it was reasonable for Mr. Sens to rely on Mr. Beach's alleged advice until a judge ruled otherwise and further argue that the Sureties' argument to the contrary was not enough to put the Sens Parties on inquiry notice before judgment was rendered in favor of the Sureties. *See* Pl.'s Post-Hr'g Br. at pp. 13-20.

The Defendants argue that the limitations period began to run on August 1, 2016 when Mr. Beach allegedly advised the Sens Parties to remove their workers from the Project or on August 18, 2016 when representatives of the Sens Parties, IOOC and the Sureties met to discuss their dispute and the Sens Parties became aware that the Sureties disagreed with Mr. Beach's purported position.

If that was not enough to put them on notice then, the Defendants argue, the Sens Parties should have been on inquiry notice after IOOC terminated Sens and SMI for cause (August 30, 2016), the Sureties commenced their lawsuit against the Sens Parties (December 21, 2016) and the Defendants withdrew their representation (January 4, 2017).[7]  Therefore, the Defendants maintain that the claim accrued in January 2017 at the very latest, thereby rendering the Initial Complaint untimely because the Sens Parties filed it on February 28, 2020, more than three years later.  *See* Reply to Pl.'s Opp'n to Mot. to Dismiss at pp. 10-11 and Def.'s Post-Hr'g Br. at pp. 5-14.

There is nothing in the record to support the Defendants' assertion that the Sens Parties should have known that they had a claim against the Defendants on August 1, 2016 when Mr. Beach allegedly advised the Sens Parties to cease work on the Project or on August 18, 2016 when IOOC terminated Sens' right to perform work on the Project for cause.  Because the Sens Parties and the Defendants had a fiduciary relationship, and because there is no evidence that the Sens Parties should have been suspicious of any legal advice they were given prior to entry of summary judgment in the Sureties' favor, the Sens Parties had "the right to relax [their] guard and rely on the good faith of the [Defendants]" as long as they were in an attorney-client relationship.  *Bresler*, 348 F.Supp.3d at 485.  Consequently, the limitations period could not have commenced until termination of the Defendants' representation, at the very earliest, although, as explained below, the Court finds it began later under the facts of this case.

The Defendants notified the Sens Parties that they were terminating their attorney-client relationship by letter dated January 4, 2017.  Nevertheless, the Court finds that the Defendants' termination of their representation of the Sens Parties was insufficient to put the Sens Parties on

---

[7] The Plaintiffs claim the Defendants continued to represent the Sens Parties through January 30, 2017.  Pl.'s Post-Hr'g. Br. at p. 10.  The Defendants claim they terminated their representation of the Sens Parties as of January 4, 2017.  Def.'s Post-Hr'g Br. at pp. 11-13.  The Court need not determine the exact date of the termination of the relationship because whether the termination date was January 4, 2017 or January 30, 2017 does not impact the Court's analysis.

notice of a potential claim against the Defendants.  The Defendants' January 4, 2017 letter gave

no indication that a claim may have existed at that time.   The Defendants terminated their

representation of the Sens Parties because "[a] basic element of our Contract was that you would

keep an advance escrow deposit with our Accounting Office against which future fees were to be

charged, and when the balance of that escrow fund was reduced, the fund would be brought back

to the agreed total sum.  We have been working at a deficit for several months now and can no

longer do so."  Def.'s Post-Hr'g Br., Ex. B (termination letter).  By all appearances, the Defendants

terminated the relationship because the Sens Parties were unable to pay the Defendants' legal fees.

There is no hint at this time that the Sens Parties and the Defendants may have had a dispute or

that the Sens Parties may have had a claim for malpractice.  Moreover, no reasonable client would

retain its counsel if it believed its counsel was providing bad legal advice or may have committed

malpractice.

Mr. Sens' uncontroverted testimony at his deposition on December 28, 2020 confirms that

he did not realize the Sens Parties may have a claim against the Defendants until after summary

judgment was entered against the Sens Parties in the Surety Lawsuit:

> Q:   Mr. Sens … Did anyone, aside from counsel, anyone that
> was not your lawyer, tell you that you had a claim against
> [the Defendants]?
>
> A:   No.
>
> Q:   How did you come to retain Mr. Hoge?
>
> A:   After -- after the judge's decree, I thought that I was led
> wrong the whole time, and so I looked for a good lawyer.
> Then I knew I had a case after that -- after that decision.

Def.'s Trial Ex. 4 (Sens deposition transcript) at 86:22-87:10.

At the hearing held on January 22, 2021, the Plaintiff's counsel argued the following:

MR. HOGE:  What you've got here, Your Honor, is a situation where you've had Mr. and Mrs. Sens -- really Mr. Sens because he's the principal of Sens, Inc. and Sens Mechanical, although Mrs. Sens is certainly involved with the companies -- in a situation where by the time they realized that they had a claim, and the testimony -- Mr. Hroblak cited to the testimony that came out during the deposition of Mr. Sens, that he did not realize that the advice he had received from Mr. Beach was incorrect until a decision on the motion for summary judgment filed in the surety lawsuit against Sens, Inc., and against some of the other indemnitors saying that, in fact, Sens, Inc. did not have the right to walk off the job.

Up until that time, Mr. Sens' belief was that the advice that he was getting from Mr. Beach was correct. Mr. Beach was asserting to Mr. Sens that the advice that he gave was correct.

\*      \*      \*

MR. HOGE: But, you know, in every conversation that Mr. Sens would have with Mr. Beach, Mr. Beach was assuring him that the advice that he had given was right, that the surety was wrong, that the other people who were suggesting it may have been incorrect for him to walk off the job without giving that written notice were wrong, but Mr. Beach defended it.  And so Mr. Sens was put in the position of, you know, wanting to believe that the lawyer who he had paid a lot of money to, coming from a very reputable firm, Whiteford Taylor, had no reason, you know, other than maybe Mr. Pike, on behalf of the surety, suggesting that maybe Mr. Beach's advice was not correct, but Mr. Pike was the adversary.

Tr. of Jan. 22, 2021 Hr'g [Dkt. No. 46] at 38:22-39:12; 44:7-44:18.  Although these statements by the Plaintiffs' counsel are not evidence, they capture what a reasonable person in Mr. Sens' position may have believed at the time.

A reasonable person in Mr. Sens' position would believe and trust his counsel.  Mr. Sens is not a lawyer and has no legal training, and he and the Sens Parties engaged a reputable law firm to represent their interests.  Mr. Sens had a reasonable basis to rely on any advice from the Defendants to navigate a significant contractual dispute, and he had no duty to inquire about the quality of the services or advice received unless and until something occurred to make him suspicious.

The Court's finding is bolstered by *Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A.*, 834 A.2d 170 (Md. Ct. Spec. App. 2003). *Supik* involves clients who retained a law firm to represent them in toxic tort litigation. *Id.* at 173. The clients often questioned their attorney's advice but agreed to follow the advice because they believed the lawyers knew best. *Id.* The attorneys settled the toxic tort case, but the clients later sued the attorneys for malpractice claiming the settlement was for less than full value. *Id.* at 175. The law firm raised a statute of limitations defense and the trial court granted summary judgment in favor of the law firm. *Id.* at 176.

On appeal, the Court of Special Appeals discussed the discovery rule and the continuation of events theory:

> When a relationship develops between two parties, built on trust and confidence, the confiding party may rely upon the "good faith of the other party so long as the relationship continues to exist." This is especially true in fiduciary relationships such as the attorney-client relationship where "a client has the right to rely on his or her lawyers' loyalty and to believe the accuracy and candor of the advice they give."

*Id.* at 178-79 (citing *Frederick Rd. Ltd. P'ship.*, 756 A.2d at 975). Ultimately the court found that there was no legal harm prior to the date of settlement. *Id.* at 183. This is so because the parties could have negotiated different terms any time before the settlement. *Id.* Once the case was settled, there was no other way to recover. *Id.*

The Court of Special Appeals reasoned that, although the clients were dissatisfied with how the attorneys handled the settlement, it is unreasonable to believe that each time a disagreement arose a client should expect to be damaged. *Id.* at 183-84. The clients contend that the attorneys repeatedly eased their concerns and reassured them. *Id.* The court, in dicta, said "[o]n the record in this case, a fact finder could conclude that it was reasonable for the [clients], untrained in the law, and relying on the fiduciary relationship with their attorneys, to have failed to discover their cause of action at an earlier date." *Id.* at 185.

*Supik* is relevant here because the Sens Parties were relying on advice allegedly given to them by the Defendants during the course of their attorney-client relationship. Although *Supik* applies the discovery rule and the continuation of events theory and holds that a client may rely on the "good faith of the [attorney] so long as the relationship continues to exist," this Court finds it was reasonable for Mr. Sens and SMI "to rely on [their] lawyers' loyalty and to believe the accuracy and candor of the advice they give" even after the Defendants terminated the attorney-client relationship. Perhaps the Court would conclude differently if the Defendants had ceased representing the Sens Parties because of irreconcilable differences relating to the case strategy and the Defendants' advice, but according to the Defendants' termination letter (the only evidence before the Court on this issue), the Defendants terminated the relationship because the Sens Parties were unable to pay the Defendants' fees.

The Defendants cite to an unpublished opinion, *Brown & Sturm v. Field Farms Ltd. P'ship (In re Field Farms Ltd. P'ship)*, 120 F.3d 261, No. 96-2529, 1997 WL 452290 (4th Cir. Aug. 11, 1997), for the proposition that Maryland courts have rejected the idea that a law firm's continued representation during an alleged harm prevents a plaintiff from discovering the harm. *Field Farms* involved former clients of a law firm who sued the firm in an adversary proceeding for faulty tax advice related to the sale of a farm. *Id.* at *2. The bankruptcy court found that the claims against the firm were barred by Maryland's statute of limitations. *Id.* at *4. The clients had received a tax deficiency notice eight years before they filed their complaint. *Id.* The clients argued that the law firm's continued representation of them during those eight years prevented them from discovering the harm. *Id.* The Fourth Circuit disagreed with the clients, stating that under Maryland law the limitations period can run even when a client is represented by a law firm. *Id.* (citing *Watson v. Dorsey,* 290 A.2d 530, 533 (Md. 1972)). Notably, the Fourth Circuit in *Field Farms* pointed out

that the clients were at least warned about the faulty tax advice before closing on the sale of the farm.  *Id.*

*Field Farms* is not applicable here because there is direct evidence on when Mr. Sens started to suspect that he had a claim against the Defendant and, in *Field Farms*, the client had been warned about the faulty tax advice before the taxable event (the sale).  There is no evidence that anyone warned Mr. Sens that Mr. Beach's alleged advice to stop working on the Project may have been bad advice.  The only evidence regarding when Mr. Sens began to suspect he may have a claim against the Defendants is his deposition testimony, which was that he did not believe he had a claim until after the state court entered summary judgment against the Sens Parties in the Surety Lawsuit.  Def.'s Trial Ex. 4 (Sens deposition transcript) at 86:22-87:10.

The Defendants argue that they were precluded from obtaining evidence on this issue because the Plaintiffs improperly asserted the attorney-client privilege to prevent Mr. Sens from testifying about facts and events that he learned from SMI's lawyers.  Reply to Pl.'s Opp'n to Mot. to Dismiss at pp. 16-18.  The Defendants could have filed a motion to compel Mr. Sens' testimony with this Court.  They did not do so and must accept the consequences.  According to the Agreed Order, the parties were to conduct discovery between December 5, 2020 and January 6, 2021 (unless otherwise agreed by the parties).  The Defendants raised this issue for the first time in their Reply filed on January 6, 2021, the discovery cutoff date.  The Defendants took Mr. Sens' deposition on December 28, 2020.  Although the parties were on a tight discovery schedule, the Defendants had time to file a motion to compel.  The Court would have promptly considered such a motion and extended the discovery deadline if necessary to implement the Court's ruling.

For these reasons, the Court concludes that the limitations period began to run on December 18, 2018, when the Circuit Court for Baltimore County entered summary judgment in

favor of the Sureties in the Surety Lawsuit. Therefore, the Initial Complaint, filed on February 28, 2020, was filed within the three-year limitations period and was timely filed.

B.    <u>Standing</u>

Next, the Court must determine whether SMI had standing to file the Initial Complaint under bankruptcy principles and whether the SMI Trustee's filing of the Amended Complaint and substitution as plaintiff for SMI was proper under the Federal Rules of Civil Procedure (cited herein as "Rule ___") and the Federal Rules of Bankruptcy Procedure (cited herein as "Bankruptcy Rule ___"). The Court concludes that, although SMI did not have standing to file the Initial Complaint, the SMI Trustee properly substituted in as a Plaintiff for SMI and the State Court Action should proceed as if it had been originally commenced by the SMI Trustee, the real party in interest.

1.    <u>SMI's lack of standing to file the Initial Complaint</u>

The Defendants argue that SMI lacked standing to file the Initial Complaint because any claim against the Defendants belongs to its bankruptcy estate. *See* Mot. to Dismiss at pp. 11-13.

The filing of a bankruptcy petition creates a bankruptcy estate. 11 U.S.C. § 541(a). The bankruptcy estate includes non-bankruptcy causes of action arising from events occurring prior to the filing of the bankruptcy petition. *Wilson v. Dollar General Corp.*, 717 F.3d 337 (4th Cir. 2013); *Tignor v. Parkinson (In re Tignor)*, 729 F.2d 977 (4th Cir. 1984), *superseded by statute,* Va. Code Ann. § 34-28.1; *Miller v. Pac. Shore Funding*, 287 B.R. 47 (D. Md. 2002). In a Chapter 7 case, only the trustee has standing to bring a cause of action that accrued before the debtor filed bankruptcy. *Nat'l American Ins. Co. v. Ruppert Landscaping Co., Inc.*, 187 F.3d 439 (4th Cir. 1999); *Bowie v. Rose Shanis Fin. Servs., LLC*, 862 A.2d 1102 (Md. Ct. Spec. App. 2004). This is the case even when the debtor was unaware of the legal basis for bringing the claim and failed to

schedule the claim. *Miller v. Pac. Shore Funding*, 287 B.R. at 50-51; *see also Ruffin v. Lockheed Martin Corp.*, CIV. WDQ-13-2744, 2015 WL 127827, at *4 (D. Md. Jan. 7, 2015) ("[I]n Chapter 7 cases, only the bankruptcy trustee-as representative of the bankruptcy estate-has standing to pursue causes of action that belong to the bankruptcy estate, even when those causes of action were not disclosed to the bankruptcy court.").

Property of the bankruptcy estate may be abandoned in three ways: (1) by the trustee after notice and a hearing, (2) by court order after notice and a hearing, or (3) by operation of law if property listed on the debtor's schedules has not been administered when the bankruptcy case closes. 11 U.S.C. § 554. If the debtor fails to schedule a cause of action that arose prepetition, then that cause of action remains property of the bankruptcy estate after the bankruptcy case is closed. *In re Hamlett*, 304 B.R. 737, 741 (Bankr. M.D.N.C. 2003) ("Under § 554(d), 'property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.' Hence, rather than being abandoned when the case is closed, unscheduled property remains property of the estate pursuant to § 554(d) after the case is closed."); *Stanley v. Sherwin-Williams Co.*, 156 B.R. 25, 27 (W.D. Va. 1993) (dismissing debtor's complaint for lack of standing because trustee did not abandon claims, claims remained property of the estate and trustee opted not to pursue claims).

SMI's claim against the Defendants is a prepetition asset because the alleged malpractice occurred in August 2016, one year before SMI filed bankruptcy.[8] Upon the filing of SMI's bankruptcy petition, the claim became property of SMI's bankruptcy estate and remained property of the estate after SMI's case was closed because SMI failed to schedule the claim. Consequently, only the SMI Trustee had standing to assert the claim for the SMI bankruptcy estate despite SMI's

---

[8] *See* footnote 12 below.

failure to schedule the claim against the Defendants and the brief closure of the bankruptcy case. But this does not end the inquiry on standing.

        2.    <u>SMI Trustee's substitution as Plaintiff and filing of Amended Complaint</u>

Even though only the SMI Trustee had standing to assert SMI's prepetition claim against the Defendants, the Sens Parties filed the Initial Complaint (without the SMI Trustee). Nevertheless, the SMI Trustee properly substituted in as Plaintiff for SMI through the Amended Complaint, and the State Court Action can and should proceed as if it had been originally commenced by the SMI Trustee, the real party in interest.

The Defendants argue that the Amended Complaint violates several Federal Rules of Civil Procedure. First, the Defendants argue that any relation back under Rule 17 (made applicable to this adversary proceeding by Bankruptcy Rule 7017) is time barred because the Initial Complaint was not timely filed. Second, the Defendants argue that the Amended Complaint is a legal nullity because the Plaintiffs filed it without the consent of the Defendants or leave of Court as required by Rule 15 (made applicable to this adversary proceeding by Bankruptcy Rule 7015). Third, the Defendants claim that the SMI Trustee violated Rule 25 (made applicable to this adversary proceeding by Bankruptcy Rule 7025) by failing to file a motion to substitute in as a party. *See* Mot. to Dismiss at pp. 15-17.

The Plaintiffs argue that the Amended Complaint merely substitutes the SMI Trustee for SMI and removes Mr. Sens and Mrs. Sens as Plaintiffs, which is proper under Rule 17(a)(3). The Plaintiffs further argue that, because the SMI Trustee's substitution was proper and the Initial Complaint was timely filed, the case should proceed as if it had been originally commenced by the SMI Trustee. The Plaintiffs also contend that the Amended Complaint does not violate Rule 15 because the Plaintiffs had the right to file an amended complaint within 21 days after the

Defendants served their motion to dismiss.  Due to the COVID-19 pandemic and related Standing

Orders, the deadline to file the Amended Complaint was extended to August 21, 2020, and the

Plaintiffs filed the Amended Complaint on July 28, 2020, well before the deadline.  The Plaintiffs

also argue the Defendants' reliance on Rule 25 is unfounded because Rule 25 applies only if, after

a case has commenced, a party dies, becomes incompetent, transfers its interest or is a public

officer who is succeeded in office by someone else.  None of these situations is present here.

Finally, the Plaintiffs claim that misjoinder of the SMI Trustee cannot be the basis for a dismissal

and ask the Court to use its powers under Rule 21 to add the SMI Trustee as a party.  *See* Pl.'s

Opp'n to Mot. to Dismiss at pp. 5-21.

3.    <u>Application of Rule 17</u>

Rule 17(a)(3) states as follows:

> The court may not dismiss an action for failure to prosecute in the
> name of the real party in interest until, after an objection, a
> reasonable time has been allowed for the real party in interest to
> ratify, join, or be substituted into the action.  After ratification
> joinder, or substitution, the action proceeds as if it had been
> originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3).[9]

"The plain language of the Rule clearly provides that when an action is brought by someone

other than the real party in interest within the limitations period, and the real party in interest joins

or ratifies the action after the limitations period has run, the amendment or ratification relates back

to the time suit was originally filed and the action need not be dismissed as time barred."  *Hess v.*

*Eddy*, 689 F.2d 977, 981 (11th Cir. 1982), cert. denied, 462 U.S. 1118 (1983), *abrogated on other*

---

[9] Maryland Rule 2-201 has the same effect as Rule 17(a)(3).  Maryland Rule 2-201 states:  "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for joinder or substitution of the real party in interest.  The joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

*grounds by Jones v. Preuit & Mauldin*, 876 F.2d 1480 (11th Cir. 1989). "Its main thrust is to allow a correction in parties after the statute of limitations has run, despite the valid objection that the original action was not brought by the real party in interest." *Wadsworth v. United States Postal Serv.*, 511 F.2d 64, 66 (7th Cir. 1975) (quoting 3A J. Moore, Federal Practice para. 17.15-1, at pp. 602-03 (2d ed. 1974)).

When a debtor commences an action and asserts claims that belong to its bankruptcy estate, the usual remedy is to substitute the bankruptcy trustee for the debtor as the real party in interest. *Rousseau v. Diemer*, 24 F.Supp.2d 137, 143 (D. Mass. 1998). Courts will consider substitution appropriate when a plaintiff made an understandable mistake in bringing the action in the plaintiff's own name. *Nicholas v. Green Tree Serv.*, 173 F.Supp.3d 250, 257 (D. Md. 2016). A court must also consider whether there has been a reasonable time for the trustee to ratify, join or be substituted in the action. *Id.* "What constitutes a reasonable time is a matter of judicial discretion and will depend upon the facts of each case." *Ruffin v. Lockheed Martin Corp.*, CIV. WDQ-13-2744, 2015 WL 127827, at *4 (D. Md. Jan. 7, 2015) (citing 6(A) Mary Kay Kane, *Fed. Prac. & Proc.* (Wright & Miller), § 1555 (3d. ed.)).

The Plaintiffs cite *Nagle v. Commercial Credit Bus. Loans, Inc.*, 102 F.R.D. 27 (E.D. Pa. 1983) to support their argument that the SMI Trustee's substitution is proper. The Court finds the analysis in *Nagle* persuasive. In *Nagle*, stockholders and bondholders of a bankrupt corporation filed a complaint for breach of the corporation's contractual rights. *Id.* at 29. The plaintiffs later filed a motion to join the trustee of the corporation's bankruptcy estate as a party plaintiff pursuant to Rule 17(a). *Id.* at 28.

The court dismissed the plaintiffs stating they had no enforceable cause of action against the defendants, but the court reasoned that the trustee could be substituted in as plaintiff for the

original plaintiffs under Rule 17. *Id.* at 31. The trustee was the real party in interest because bankruptcy law gave the trustee the right to prosecute all causes of action belonging to the bankruptcy estate. *Id.* To prohibit the substitution of the trustee would be contrary to the language and spirit of Rule 17. *Id.* at 32.

The defendant raised the defense that the trustee was time barred. *Id.* The court disagreed, reasoning that, because the original complaint was timely filed, the relation back provision in Rule 17 allowed the trustee to be substituted in as the proper plaintiff. *Id.* The court concluded that, "since the original complaint was not time barred, the trustee is accorded the opportunity to substitute, even though the applicable statute of limitations for this action would have expired before his attempted intervention." *Id.* The court also found that substitution did not prejudice the defendant because the claims of the trustee were identical to the original plaintiffs' claims and concerned the very same conduct of the defendant. *Id.* For those reasons, the court allowed the trustee to substitute in as the proper plaintiff.

The Plaintiffs also cite *Rousseau v. Diemer*, 24 F.Supp.2d 137 (D. Mass. 1998). The Court finds the reasoning in *Diemer* to be equally persuasive. In *Diemer*, the plaintiff filed bankruptcy and received a discharge. *Id.* at 141. Approximately a year-and-a-half after receiving a discharge, the plaintiff filed a five-count complaint against the defendant. *Id.* at 142. The trustee filed a motion to substitute in as plaintiff pursuant to Rule 17. *Id.* at 143. The court stated that the usual remedy when a debtor commences an action asserting claims that belong to the bankruptcy estate is to substitute the trustee in place of the debtor. *Id.* Furthermore, the court cited the relation back section of Rule 17 which provides that "such substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." *Id.*

The defendants argued that allowing the trustee to substitute in as plaintiff so late in the case would be contrary to Rule 17's requirement that the real party in interest be substituted within a reasonable time after an action is filed. *Id.* The court reasoned that what constitutes a "reasonable time" is a matter of judicial discretion. *Id.* The court noted that the trustee waited 16 months to file a motion to substitute and it was unclear whether the plaintiff had scheduled the claims in his complaint. *Id.* at 143-44. In allowing the trustee to be substituted in as the proper plaintiff, the court stated:

> I am mindful of the fact that if I deny the Trustee's motion to substitute, Plaintiff's creditors would be left without a remedy. Thus, the axiom that substitution of the real party in interest to avoid injustice favors allowing the Trustee's motion in this case. At the same time, I must examine whether or not substitution of the Trustee as the real party in interest at this late date would prejudice the Defendants. "As long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action against him, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense." 6(C) *Charles A. Wright, Arthur R. Miller & Edward H. Cooper*, Federal Practice and Procedure, § 1501 at 524 [sic]. I find that the Defendants in this action would not be prejudiced if the Trustee is substituted as the real party in interest. Defendants have had the opportunity to file responsive pleadings. Additionally, nothing will change as a result of substituting the Trustee as plaintiff in this action, except that this action will now be maintained for the benefit of Plaintiff's creditors and not for the Plaintiff himself.

*Id.* at 144.

Here, the SMI Trustee is the true party in interest. The Court concludes substitution of the SMI Trustee for SMI was proper and the SMI Trustee has replaced SMI as a Plaintiff. Rule 17(a) makes clear that the proper party in interest should be given the opportunity to join a cause of action. Further, "[a] Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the

events or the participants." *Advanced Magnetics, Inc., v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997).

As discussed in Section IV.A. above, the Sens Parties timely filed the Initial Complaint on February 28, 2020. The SMI Trustee's substitution for SMI as Plaintiff relates back to the date the Sens Parties filed the Initial Complaint. Fed. R. Civ. P. 17(a)(3); *Hess v. Eddy*, 689 F.2d at 981. The Court concludes that the SMI Trustee substituted in as a Plaintiff within a "reasonable time" as required by Rule 17(a)(3). A five-month period between the filing of the Initial Complaint, *i.e.*, February 28, 2020, and the filing of the Amended Complaint, *i.e.*, July 28, 2020, is not an unreasonable time period, especially when the substitution had no impact on the merits of the case and the SMI Trustee needed time to analyze the claim against the Defendants. By comparison, the court in *Diemer* allowed a trustee to be substituted as the proper plaintiff over 16 months after the original case filing.

Failure to allow the SMI Trustee to substitute in as a Plaintiff will deny SMI's creditors a remedy and may result in an unfair windfall in favor of the Defendants. In *Canterbury v. Fed.-Mogul Ignition Co.*, 483 F.Supp.2d 820 (S.D. Ia. 2007), the court addressed the policy reasons in favor of allowing a bankruptcy trustee to substitute for a debtor as plaintiff:

> Refusing to permit the substitution of the Trustee as the real party in interest, then, would represent a significant detriment to the Trustee and, more importantly, to [the debtor's] creditors, while at the same time permitting Defendant to receive a possible windfall by virtue of not being held accountable for its allegedly illegal actions. Accordingly, the Court concludes that the interests of justice are best served by permitting the substitution of the Trustee for [the debtor] in the present action.

*Id.* at 827. These same considerations were discussed by this Court in *In re Lyles*, Case No. 10-32926-DK, in which Judge Keir entered an order reopening a Chapter 7 bankruptcy case to allow

the trustee to pursue a previously unscheduled cause of action. *In re Lyles*, Case No. 10-32926-DK, Tr. of Oct. 23, 2013 Hr'g. [Dkt. No. 30], pp. 11-15.

The Defendants, on the other hand, will not be prejudiced by the SMI Trustee's substitution in as a Plaintiff. "As long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action against him, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted invoke a limitations defense." 6(A) Mary Kay Kane, *Fed. Prac. & Proc.* (Wright & Miller), § 1501 (3d. ed.). Moreover, having to defend an action on the merits does not amount to "legal prejudice" even if it impacts a party's estoppel defense. *In re Narcisse*, No. 96-21345 NHL, 2013 WL 1316706, at *12 (Bankr. E.D.N.Y. Mar. 29, 2013) (concluding that reopening of case "did not amount to legal prejudice" for defendant in personal injury action because defendant "may receive a windfall to the extent that the [personal injury action] may well be dismissed based on a technical defense that is far afield from the merits of the claims and defenses" and that, even though reopening may impact defendant's estoppel defense in the personal injury action, "this too does not amount to prejudice") (citations omitted).

The Defendants were fully apprised of the claim on or about June 5, 2019, when counsel for the Sens Parties sent a letter to the Defendants stating that he was retained in connection with a legal malpractice claim against the Defendants, describing the claim and the impact of the Defendants' alleged advice on the Sens Parties and advising the Defendants that "[b]y this letter, I am putting you and WTP on formal notice of this claim." Def.'s Trial Ex. 5 and Pl.'s Trial Ex. 1 (June 5, 2019 notice letter). Moreover, the Initial Complaint filed on February 28, 2020 described the claim in detail. The claim asserted by the SMI Trustee in the Amended Complaint is identical to the claim asserted by the Sens Parties in the Initial Complaint and concerns the very

same conduct of the Defendants. The Defendants have demonstrated that they are fully prepared to defend the action. Nothing will change as a result of the SMI Trustee being substituted in as Plaintiff for SMI except that the action will now be maintained for the benefit of SMI's creditors rather than for SMI. Substituting the SMI Trustee in as a Plaintiff will not require the Defendants to alter their legal strategy and will have little, if any, impact on how the State Court Action proceeds.

### 4.   Application of Rule 15

Generally, a plaintiff must obtain leave of court or consent of the opposing party to file an amended pleading more than 21 days after serving it. Fed. R. Civ. P. 15(a). "If an amended pleading cannot be made as of right and is filed without leave of court or consent of the opposing party, the amended pleading is a nullity and without legal effect." *Jamison v. Todd Allan Printing, Inc.*, Civil Action No. DKC 2008-2025, 2009 U.S. Dist. LEXIS 142865, at *6 (D. Md. Feb. 11, 2009) (citing *United States ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003)).

Here, the Court concludes that Rule 15 does not apply and that leave of Court was not required for the Plaintiffs to file the Amended Complaint. Although the Amended Complaint is couched as an "amended" pleading, it is not an amended pleading as contemplated by Rule 15. Rather, it is simply the procedural mechanism for substituting in the SMI Trustee as Plaintiff in place of SMI (as was required by applicable law) and dropping Mr. Sens and Mrs. Sens as Plaintiffs. Other than the change of parties and the elimination of a few sentences relating to Mr. Sens and Mrs. Sens that are not relevant to the issues presented, the Amended Complaint is identical to the Initial Complaint. The Court will not put form over substance here. *See Creditors' Comm. of Jumer's, Castle Lodge, Inc., v. D. James Jumer (In re Jumer's Castle Lodge, Inc.)*, 338

B.R. 344, 356 (C.D. Ill. 2006) ("As it has been repeatedly stated, courts generally do not elevate form over substance.").  The Amended Complaint was, in substance, a substitution of a Plaintiff, not an amendment of a pleading.

Even if Rule 15 did apply, the Plaintiffs timely filed the Amended Complaint under the rule.  Rule 15 provides that a party may amend its pleading once as a matter of course, if the pleading is one to which a responsive pleading is required, within 21 days after service of the responsive pleading or 21 days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier.  Fed. R. Civ. P. 15(a)(1)(B).

The United States District Court for the District Maryland (the "District Court") issued Standing Order 2020-05, "Court Operations Under the Exigent Circumstances Created by COVID-19," Misc. No. 00-308, on March 20, 2020 (the "March 2020 Standing Order").  The March 2020 Standing Order postponed all civil, criminal and bankruptcy proceedings scheduled to occur from March 16, 2020 through April 24, 2020, unless the presiding judge in an individual case ordered otherwise.  The March 2020 Standing Order further provided that "[a]ll filing deadlines now set to fall between March 16, 2020, and April 24, 2020, are EXTENDED by forty-two (42) days, unless the presiding judge in an individual case sets a different date by an order issued after the date of this Order."  Standing Order at p. 2.[10]

On or about April 10, 2020, the District Court issued Standing Order 2020-07, "Court Operations Under the Exigent Circumstances Created by COVID-19," Misc. No. 00-308 (the "April 2020 Standing Order").  This order provided, in relevant part, "all filing deadlines, in all cases, originally set to fall between March 16, 2020, and June 5, 2020, are EXTENDED by eighty-

---

[10] On March 26, 2020, this Court issued a memorandum to provide guidance to the bar and unrepresented parties on the application of the March 2020 Standing Order.  Memorandum Addressing the Continuation of Hearings and the Extension of Filing Deadlines in Standing Order 2020-05 of the United States District Court for the District of Maryland, Misc. No. 20-90006.

four (84) days, unless 1) the presiding judge in an individual case sets a different date by an order issued after the date of this Order, or 2) a new date is established by an administrative order of the Bankruptcy Court issued after the date of this Order."[11]  This Court did not provide a new date by way of an Administrative Order issued after the April 2020 Standing Order.

Under Rule 15, the Plaintiffs had the right, as a matter of law, to file the Amended Complaint within 21 days of May 8, 2020, when the Defendants served their initial motion to dismiss on the Sens Parties.  Therefore, the deadline for any amended complaint was May 29, 2020.  Because this deadline fell between March 16, 2020 and June 5, 2020, the Standing Orders extended the deadline by 84 days to August 21, 2020.  As a result, even if Rule 15 did apply, the Plaintiffs would be deemed to have timely filed their Amended Complaint on July 28, 2020.

Also, even if Rule 15 were operative and even if the Plaintiffs did not timely file the Amended Complaint under the Standing Orders, the Court would have granted the Plaintiffs leave of Court, if they had requested it, to amend the Complaint to substitute the SMI Trustee for SMI and to drop Mr. Sens and Mrs. Sens as Plaintiffs.  Rule 15(a)(2) provides that the Court "should freely give leave [to amend] when justice so requires," and the Court concludes that justice required that the SMI Trustee be substituted for SMI as Plaintiff.  To the extent the Amended Complaint was procedurally deficient because leave of Court was in fact required, the Court grants such leave now *nunc pro tunc* to the filing of the Amended Complaint.

5.    Application of Rule 21

Rule 21 allows this Court, at any time, to add or drop a party *sua sponte* or on motion of a party.  Fed. R. Civ. P. 21.  The Court concludes that Rule 17(a)(3), discussed above, not Rule 15,

---

[11] On April 13, 2020, this Court followed up the April 2020 Standing Order by issuing an administrative order addressing deadlines for responding to certain motions and applications not relevant to this proceeding. Administrative Order 20-09 Setting Deadlines for Certain Motions and Applications, Misc. No. 20-90006.

was the proper procedural tool for the Plaintiffs to change the parties. Even so, to the extent necessary to effectuate the Court's ruling, the Court invokes its powers under Rule 21 to add the SMI Trustee as a Plaintiff and to drop SMI, Mr. Sens and Mrs. Sens as Plaintiffs, *nunc pro tunc* to the filing of the Amended Complaint, because "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21.

### 6.    Application of Rule 25

The Court rejects the Defendants' argument that the Amended Complaint is not procedurally proper under Rule 25. Rule 25 applies when a party dies, becomes incompetent, transfers its interest or is a public officer who is succeeded in office by someone else. Neither of these circumstances is present, and thus, Rule 25 does not apply here.

### 7.    Implication of the Tolling Agreement

The parties dedicated significant time to briefing and arguing the impact of the Tolling Agreement. Because the Initial Complaint was timely filed and the SMI Trustee was properly substituted as a Plaintiff effective as of the filing of the Initial Complaint, the tolling of the limitations period and the fact that the SMI Trustee was not a party to the Tolling Agreement have no import.

### C.    Judicial Estoppel

Finally, the Court must address the impact of the doctrine of judicial estoppel on the parties' rights. The Court finds that SMI and the SMI Trustee are not judicially estopped from pursuing the malpractice claim against the Defendants even though SMI failed to schedule the claim. There is no evidence that SMI's failure to schedule the claim was anything other than an oversight due to the unknown nature of the claim when the bankruptcy case was filed and the lack of

sophistication of the Sens Parties, and there is no basis to estop the SMI Trustee because the failure to schedule the claim against the Defendants was the responsibility of SMI, not the SMI Trustee.

### 1.    Doctrine of judicial estoppel

The doctrine of judicial estoppel has been described by the United States Supreme Court as follows:

> [W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  The purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.  *Id.*

The Fourth Circuit identified the following factors for a court to consider when deciding whether judicial estoppel applies to a particular case: (i) the party sought to be estopped must be adopting a position that is inconsistent with a stance taken in prior litigation; (ii) the position sought to be estopped must be one of fact not law; (iii) the prior inconsistent position must have been accepted by the court, and (iv) the party sought to be estopped must have intentionally misled the court to gain unfair advantage.  *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 458 (4th Cir. 2017).  The Fourth Circuit has invoked the doctrine of judicial estoppel to prohibit litigants from "playing fast and loose" or "blowing hot and cold" by barring parties from taking inconsistent positions during the course of litigation.  *Federal Deposit Ins. Corp. v. Jones*, 846 F.2d 221, 234 (4th Cir. 1988) (quoting *United Virginia Bank v. B.F. Saul Real Estate*, 641 F.2d 185, 190 (4th Cir. 1981)).  Judicial estoppel has been applied by the Fourth Circuit when faced with a litigant's inconsistent positions in related cases or in the same or related litigation.  *Id.*

2.    Application of judicial estoppel in bankruptcy cases

When filing a voluntary petition, a debtor is required to schedule all of its assets.  11 U.S.C. § 521(a)(1)(B)(i).  The term "assets" includes all property of whatever kind including any causes of action a debtor could bring.  11 U.S.C. § 541(a); *Calafiore v. Werner Enter. Inc.*, 418 F.Supp.2d 795, 797 (D. Md. 2006).  The debtor's duty to disclose any causes of action or other assets continues for the duration of the bankruptcy proceeding.  *Calafiore*, 418 F.Suppp.2d at 797.

Judicial estoppel may apply in a bankruptcy case when a debtor fails to schedule its assets. "The rationale for applying judicial estoppel under these circumstances is that complete and honest disclosure of all of a debtor's assets is a 'critical step' in the bankruptcy process."  *Access Limousine Serv. v. Serv. Ins. Agency, LLC*, Civil Action No. TDC-15-3724, 2016 U.S. Dist. LEXIS 145044 (D. Md. Oct. 19, 2010) (quoting *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988)).  "In determining whether the debtor acted inadvertently or in bad faith, courts consider whether the debtor has knowledge of the potential claim or a motive to conceal it."  *In re Narcisse*, No. 96-21345 NHL, 2013 WL 1316706, at *7 (Bankr. E.D.N.Y. Mar. 29, 2013).

3.    Application of doctrine to SMI

The Defendants argue that the doctrine of judicial estoppel barred SMI from pursuing the malpractice claim in the Initial Complaint because SMI took a prior position inconsistent with the Initial Complaint and schemed to conceal the claim from the Court.  *See* Mot. to Dismiss at pp. 17-20; Reply to Pl.'s Opp'n to Mot. to Dismiss at pp. 11-19; and Def.'s Post-Hr'g Br. at pp. 20-27.  The Plaintiffs maintain that SMI's failure to disclose the malpractice claim against the Defendants was inadvertent and, therefore, judicial estoppel does not apply.  Pl's Opp'n to Mot. to Dismiss at p. 23; Pl.'s Post-Hr'g Br. at pp. 25-29.

The Court concludes, after considering the four-part test set forth by the Fourth Circuit in *Minnieland*, that the doctrine of judicial estoppel does not apply to SMI.

The first requirement is that the party sought to be estopped must be adopting a position that is inconsistent with a stance taken in prior litigation. The Defendants maintain that SMI's prior position was that it had no claim against the Defendants (or anyone else) because its schedules, signed under penalty of perjury, did not disclose any claim. When the Sens Parties filed the Initial Complaint, they, including SMI, took the position that they had a claim against the Defendants. The Defendants argue that these are inconsistent positions. Mot. to Dismiss at p. 19. However, a review of the timing of the purportedly inconsistent positions reveals that the first part of the test is not, in fact, met here. According to Mr. Sens' testimony and as discussed above, SMI did not have reason to discover the claim until December 18, 2018 when the Circuit Court for Baltimore City entered summary judgment in favor of the Sureties in the Surety Lawsuit. *See* Section IV.A. above. SMI did not have knowledge of the claim on August 25, 2017 when SMI filed its original Schedule A/B and ostensibly took the prior inconsistent position.

With the failure of the first requirement, the doctrine of judicial estoppel cannot apply. Nevertheless, the Court will complete the analysis by examining the other requirements.

The second *Minnieland* requirement is that the position sought to be estopped must be one of fact not law. The existence or nonexistence of a claim is a factual matter. *USInternetworking, Inc. v. General Growth Mgmt. (In re USInternetworking, Inc.)*, 310 B.R. 274 (Bankr. D. Md. 2004). Thus, the second requirement is met here.

The third *Minnieland* requirement is that the prior inconsistent position must have been accepted by the court. According to the Defendants, the Court "accepted" SMI's position in its Schedule A/B that it had no claim against the Defendants when the Court issued a final decree and

closed the case on August 14, 2019.  Mot. to Dismiss at p. 19; Reply to Pl.'s Opp'n to Mot. to Dismiss at pp. 13-14.  But the Defendants ignore the fact that SMI moved to reopen its case on March 29, 2020, one month after the Sens Parties filed the Initial Complaint.  Even if the Court agreed with the Defendants that the Court "accepted" SMI's allegedly prior inconsistent position (the Court may or may not), SMI attempted to remedy the situation by moving to reopen the case and disclosing the claim only one month after the Sens Parties filed the Initial Complaint.  Because two other *Minnieland* requirements are not met (*i.e.*, the first requirement, discussed above, and the fourth requirement, discussed below), the Court need not make a finding regarding whether it accepted SMI's purported prior inconsistent statement.

The fourth *Minnieland* requirement – which is the gravamen of the Defendants' estoppel argument against SMI – is that the party sought to be estopped must have intentionally misled the court to gain unfair advantage.  The Defendants argue vehemently that the claim was "well known" to SMI, that SMI's omission of the claim in its schedules was "deliberate" and that SMI "hoped to obtain a settlement for [its] own personal benefits, without regard to [its] creditors and without including the Trustee as part of the process."  Mot. to Dismiss at pp. 19-20.  The Defendants further argue that "Plaintiffs want this Court to overlook the dishonesty of SMI in intentionally choosing to not disclose a purported asset, then trying to collect on it personally, and then making false statements to the Court about why it was not disclosed previously.  They want the Court to disregard this arguably criminal conduct under 18 U.S.C. § 157 because the Debtors did not get away with their plan and now the Trustee is the real party in interest."  Reply to Pl.'s Opp'n to Mot. to Dismiss at pp.11-12.  In support, the Defendants point to the fact that the Sureties had already filed suit by the time SMI filed its bankruptcy petition and initial schedules, that the Sens Parties made demand on the Defendants before the Court closed the SMI case and that the Sens

Parties spent "nearly a year trying to extract a settlement from the Defendants without disclosing the existence of the claims" to the Court or SMI Trustee.  Mot. to Dismiss at p. 20.

However, there is no evidence that SMI sought to intentionally mislead the Court to gain an unfair advantage, and there is nothing to indicate that Mr. Sens deliberately failed to disclose the claim.[12]  The Defendants' argument that SMI was attempting to extract a settlement without disclosing the claim is unsubstantiated and proven false because the Sens Parties filed suit against the Defendants in a public proceeding and SMI promptly thereafter moved to reopen its case to disclose the claim and allow the SMI Trustee to administer the asset as she deemed appropriate.

The Defendants argue that "[t]he actions taken by the Plaintiffs were highly prejudicial to the estate, as well as the Defendants" because (i) the delay in disclosing the claim against the Defendants "impeded the Trustee from timely administering the cases," (ii) the allocation agreement splits the control of the case between Sens and the SMI Trustee "depriving the Trustee of the full measure of discretion that bankruptcy trustees usually enjoy," (iii) the filing of the Initial Complaint "[d]epriv[ed] the Trustee of the opportunity to investigate and negotiate prior to the commencement of litigation" and deprived the Defendants of "the ability to have a meaningful pre-litigation dialog with a disinterested fiduciary prior to the commencement of expensive litigation," and (iv) "the Plaintiffs failed to preserve the Trustee's claims as part of the Tolling

---

[12] In their Post-Hearing Brief, the Plaintiffs appear to imply that the malpractice claim may not be a prepetition claim because it did not accrue until January 2019.  Specifically, the Plaintiffs argue:

> Thus, the Sens parties could have plausibly taken the position that SMI's claim was not a claim of the estate, and that SMI's creditors should not have a right to any share of the recovery.  But this is not what the Sens parties did.  Soon after they filed the case against WTP, they involved the Trustee and expressed their willingness to share in the recovery with SMI's creditors.  Neither Plaintiffs nor their counsel intended to deprive any creditor of its rightful recovery.

Pl.'s Post-Hr'g. Br. at p. 33.  To the extent that the Plaintiffs maintain that the malpractice claim is a postpetition cause of action, this Court disagrees.  As detailed throughout this Memorandum, the cause of action arose in August 2016 when Mr. Beach allegedly advised the Sens Parties to cease work on the Project and the limitations period began to run in December 2018 when summary judgment was entered in favor of the Sureties.

Agreement and subsequent extensions." Reply to Pl.'s Opp'n to Mot. to Dismiss at pp.18-19. The Defendants conclude that "[b]ut for [the Sens Parties'] complete and utter failure to timely disclose the claims, the Debtor's [sic] insiders would not be poised to profit from the claims personally. Rather, any recovery would have gone solely to costs of administration and the payment of legitimate creditors. Permitting the Debtor and its insiders to profit personally from their flagrant deception would contravene basic principles of judicial estoppel." Reply to Pl.'s Opp'n to Mot. to Dismiss at p. 19.

The Court rejects the Defendants' arguments that the Plaintiffs' actions were "highly prejudicial" to SMI's bankruptcy estate. The SMI Trustee is in the best position to say whether the delay in disclosing the claim impeded her timely administration of the Sens Case or the SMI Case, deprived her of the discretion typically enjoyed by a bankruptcy trustee and/or deprived her of the opportunity to investigate and negotiate before litigation was commenced. She has not made either claim, and there is no evidence that the SMI Trustee or any other party in interest in either bankruptcy case has been prejudiced by the delay. The Court understands the Defendants' frustration when they claim they were deprived of the opportunity to explore the claim and settlement discussions with a "disinterested fiduciary" before commencement of the litigation, but the Defendants have that opportunity now and have had that opportunity since July 2020 when the SMI Trustee became a Plaintiff. As stated in Section IV.B.7. above, the Tolling Agreement has no import and any failure by the Sens Parties to preserve the Trustee's claims in the Tolling Agreement is not relevant to the issues presented.

The Court concludes that SMI's failure to schedule the claim is not equivalent to a concealment of the claim under the facts here and that the delayed disclosure of the claim appears to be attributable to a combination of the unavailability of SMI's bankruptcy counsel and the

inadvertence of the Plaintiffs' litigation counsel. At the January 22, 2021 hearing, counsel for the Plaintiffs explained that the Sens Parties did not realize they had a claim against the Defendants until summary judgment was entered in the Surety's favor. Tr. of Jan. 22, 2021 Hr'g. [Dkt. No. 46] at 46:18-50:17. He stated he was retained by the Sens Parties soon thereafter and concluded that there was a potential claim against the Defendants in the Spring of 2019 after analyzing the case. *Id*. The Plaintiffs' counsel said that he did not know the SMI Case was still open at that time and that the Plaintiffs did not have access to their bankruptcy counsel due to bankruptcy counsel's serious health issues. *Id*. He took responsibility for not seeking out replacement bankruptcy counsel sooner but maintained that SMI, Mr. Sens and Mrs. Sens moved to reopen their bankruptcy cases quickly after filing the Initial Complaint to disclose the existence of the malpractice claim. *Id*. The Plaintiffs contend that the failure to amend the bankruptcy schedules prior to the close of the SMI Case in August 2019 cannot be imputed to Mr. Sens or SMI in light of the bankruptcy counsel's unavailability due to health issues and his litigation counsel's inadvertent oversight that the SMI Case was still open.

The Court finds *In re Barger*, 279 B.R. 900 (Bankr. N.D. Ga. 2002), illustrative on this issue. In *Barger*, the bankruptcy court considered a similar failure to disclose a litigation claim and held:

> The Debtor's failure to *schedule* the claim is not equivalent to a *concealment* of it. … Debtor had litigation counsel and bankruptcy counsel who were advising her as to her rights and duties. Had her counsel prepared an amendment to her schedules for her, she would presumably have signed it and it would have been filed, as the Federal Rules of Bankruptcy Procedure authorize. FED. R. BANKR. P. 1009(a). Because counsel did not prepare an amendment, admittedly because of oversight, she justifiably could have concluded that she had no further obligations. It would be patently unfair to attribute counsel's error to Debtor in these circumstances. Her counsel's failure to amend the schedules does not render Debtor's conduct offensive and, in the circumstances of

> this case, was nothing more than inadvertence on counsel's part.
> Clearly, neither Debtor nor Debtor's counsel acted with an
> intentional or manipulative disregard of the legal system.

*Barger*, 279 B.R. at 906 (emphasis in original). Similarly, here, based on the statements of the Plaintiffs' counsel and the lack of any evidence to the contrary, the Court finds that the delay in disclosing the malpractice claim was not intentional and that neither SMI nor its counsel "acted with an intentional or manipulative disregard of the legal system." *Id.*

Moreover, it would be "incongruous to punish [SMI's] creditors and impair their prospects for a potential recovery in the bankruptcy case in order to improve the [Defendants'] judicial estoppel argument." *Id.* at 909. SMI cured its earlier failure to disclose the malpractice claim, and "[a]ny advantage which [SMI] may have gained by omitting the asset from [its] schedules is eliminated by reopening, amending the schedules and allowing the [SMI] Trustee to administer the asset." *Id.* (quoting *In re Daniel*, 205 B.R. 346, 349 (Bankr. N.D. Ga. 1997)).

The Defendants' arguments about prejudice are, at their core, arguments about preserving a potentially valuable asset (the claim against the Defendants) for the benefit of the estate and the estate's creditors. However, the Defendants did not file a claim in the SMI Case and therefore will not participate in any distribution of assets in that case. The only parties that have standing to make a prejudice argument regarding the delay in disclosure are the SMI Trustee and creditors of the SMI estate, and neither the SMI Trustee nor any creditor has made any argument that they have been prejudiced by the delay. To the contrary, the estate could benefit significantly from this potentially valuable claim despite any alleged delay in its disclosure and prosecution. *See id.* at 908 ("It is also appropriate to note that application of judicial estoppel to prevent administration of the claim in this case could inflict the remedy of judicial estoppel on parties who had nothing to do with the conduct the remedy is designed to deter, and who should be the beneficiaries of proper disclosure, namely, Debtor's creditors."). Furthermore, the SMI Trustee served the motion

to approve the allocation agreement, which provides that the SMI Trustee and Sens will share equally any recovery on account of the claim against the Defendants, on all creditors and parties in interest in the SMI Case and no objections to the motion were filed. The Court gives deference to the SMI Trustee in administering the estate and determining an appropriate allocation for the potential litigation proceeds.

The Court finds, based on the evidence presented (and the lack of evidence presented), that SMI did not intend to mislead the Court or anyone else and did not attempt to gain an unfair advantage. For these reasons, the doctrine of judicial estoppel does not apply to SMI.

### 4.      Application of doctrine to SMI Trustee

The Defendants argue that the SMI Trustee was aware of SMI's malpractice claim against the Defendants before SMI's bankruptcy estate was closed. The Defendants assert that the SMI Trustee should therefore be judicially estopped from filing the Amended Complaint. The Defendants primarily rely on two cases – *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785 (7th Cir. 2013) and *Scharr v. Troutman Sanders, LLP (In re Fundamental Long Term Care, Inc.),* 542 B.R. 299, 307 (Bankr. M.D. Fla. 2015) – to support their argument that judicial estoppel applies to the SMI Trustee due to the Sens Parties' control over the State Court Action. Specifically, the Defendants assert that the SMI Trustee hired the Sens Parties' litigation counsel, the Sens Parties are financing the litigation, the Sens Parties will share in any recovery with the SMI bankruptcy estate and the SMI Trustee, through her counsel, impeded the Defendants' ability to discover whether she had knowledge of the claim prior to the closing of the SMI case. In other words, the Defendants argue that, as in *Grochocinski* and *Troutman Sanders*, the SMI Trustee is essentially pursuing the malpractice claim for the benefit of the Sens Parties so their failure to list the claim in their initial bankruptcy schedules should be binding on her.

The Plaintiffs argue that SMI's failure to schedule the claim against the Defendants was inadvertent and unintentional. They contend that SMI was not aware it had a potential claim against the Defendants until after the SMI Case was closed and that Mr. Sens and SMI never concealed SMI's claim from the SMI Trustee. According to the Plaintiffs, Mr. Sens and SMI took the appropriate steps in March 2020 by reopening SMI's bankruptcy case and amending its schedules to include the claim against the Defendants. They maintain that any failure to properly schedule the claims prior to the filing of the Initial Complaint is attributable to SMI's counsel and the unknown nature of the potential claim until the Circuit Court for Baltimore County granted summary judgment in favor of the Sureties in the Surety Lawsuit.

As set forth in the previous section, the Court finds that SMI is not judicially estopped from pursuing the malpractice claim against the Defendants because there is no evidence that SMI intentionally misled the Court or attempted to gain an unfair advantage and because the delay did not cause prejudice to creditors of the estate. Nevertheless, even if SMI were estopped from pursuing the claim, the doctrine of judicial estoppel would not preclude the SMI Trustee from pursuing the claim because SMI's failure to include the claim on its initial schedules is not attributable to the SMI Trustee and the elements of judicial estoppel are not met with respect to any alleged inconsistent statements made, or actions taken, by the SMI Trustee. This principle was explained by the United States Bankruptcy Court for the Northern District of West Virginia:

> In this case, however, no need exists to apply the judicial estoppel tests because the Debtor's Chapter 7 trustee will be substituted as a party plaintiff, and the fact that the Debtor may have taken an inconsistent position in her schedules and statements accompanying her bankruptcy petition does not implicate the rights of the trustee to pursue the claims on behalf of the bankruptcy estate. The Debtor's omitted claims became an asset of the bankruptcy estate when the debtor filed her petition. 11 U.S.C. § 541(a). The trustee then became the real party in interest. Since that time, the trustee never took an inconsistent position under oath with regard to the

> claim.  Thus, the trustee cannot now be judicially estopped from
> pursuing it.

*Sheehan v. Key Fin. Corp. (In re Satterfield)*, Bankr. No. 09-1102, 2010 WL 2928330, at *4 (Bankr. N.D.W. Va. July 26, 2010).  *See also Stephenson v. Malloy*, 700 F.3d 265, 272 (6th Cir. 2012) (joining the Fifth, Tenth and Eleventh Circuits in holding that judicial estoppel does not bar a trustee from pursuing claims that a debtor failed to disclose).

In this case, the Defendants maintain that the SMI Trustee was made aware of the potential claim prior to the filing of her final account in the SMI Case yet she still certified that she had completed the administration of the estate.  Therefore, the Defendants argue that she should be judicially estopped from pursuing the claim.  The Court disagrees.  Although it is unclear when the SMI Trustee first learned of the potential malpractice claim, even if it were prior to the filing of her final account, there is no evidence that the SMI Trustee intentionally misled the court to gain an unfair advantage with respect to the malpractice claim.  Thus, at least one of the required elements of judicial estoppel are not met.  *Minnieland*, 867 F.3d at 458.  Further, the cases relied on by the Defendants – *Grochocinski* and *Troutman Sanders* – are readily distinguishable from the facts here.  In those cases, the respective courts found that the bankruptcy trustee was essentially pursuing litigation for the benefit of a particular creditor as opposed to the bankruptcy estate.  Consequently, the courts determined that the trustees were bound by prior inconsistent statements made by the particular creditors and judicially estopped from pursuing the claims.  That is not the case here.

The SMI Trustee is pursuing the malpractice action for the benefit of the SMI bankruptcy estate, not a particular creditor.  Moreover, the SMI Trustee's motion to approve the allocation agreement with Sens stated:

> The Trustee has concluded in her business judgment that the
> proposed Allocation Agreement is in the best interests of the Estate

> considering, among other things, the Trustee's joining the Lawsuit as a co-plaintiff allows the Estate to benefit from the significant work already performed by counsel for Sens, Inc. in bringing the malpractice action.    In other words, the Trustee's joinder is preferable to having to commence a separate lawsuit based on identical facts.  In addition, representation by special counsel on a contingency basis will allow the Estate to avoid the cost, delay and uncertainty typically associated with tort litigation.

SMI Case, Mot. for Approval of Allocation Agreement with Sens Parties [Dkt. No. 127] at ¶ 12.

The terms of the allocation agreement were disclosed, were not opposed by the Defendants and in

no way establish that the SMI Trustee is pursuing the malpractice action for the benefit of the Sens

Parties.    Rather, the SMI Trustee, in her sound business judgment after weighing the risks

associated with pursuing the malpractice claim, determined that joining the lawsuit as a co-plaintiff

was in the best interests of the SMI bankruptcy estate.  The SMI Trustee made this determination

after the filing of the Initial Complaint.  Her actions in no way challenge the integrity of the Court

and certainly are not comparable to the actions of the trustees in the *Grochocinski* and *Troutman*

*Sanders* cases.

Accordingly, the SMI Trustee is not judicially estopped from pursuing the malpractice

action on behalf of the SMI bankruptcy estate.

V.    <u>CONCLUSION</u>

For the reasons stated above, the Court concludes (i) both the Initial Complaint and the

Amended Complaint were timely filed; (ii) although SMI did not have standing to file the Initial

Complaint, the SMI Trustee properly substituted in as a Plaintiff for SMI and the State Court

Action can and should proceed as if it had been originally commenced by the SMI Trustee, the

real party in interest; and (iii) neither SMI nor the SMI Trustee is judicially estopped from pursuing

the malpractice claim against the Defendants.  An order consistent with this memorandum opinion

will be issued contemporaneously herewith.

cc:     All Parties
        All Counsel

**END OF OPINION**